FILED
2021 Jul-28  PM 04:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**

**CASE NO: 2:21-cv-00802-JHE**

**TASHA COOLEY,**
individually and on behalf of all
others similarly situated,                                        **CLASS ACTION**

      Plaintiff,                                        **JURY TRIAL DEMANDED**

v.

**KDVH ENTERPRISES, LLC D/B/A**
**BENTON NISSAN OF HOOVER,**

      Defendant.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO**
**DISMISS AND TO COMPEL ARBITRATION**

      Plaintiff Tasha Cooley hereby files her Response in Opposition to the Motion to Dismiss and to Compel Arbitration (the "Motion") filed by Defendant KDVH Enterprises, LLC d/b/a Benton Nissan of Hoover ("Benton") on July 14, 2021, [DE 9], and states as follows:

**I.**      **INTRODUCTION**

      Over seven years ago, in March 2014, Plaintiff purchased a vehicle from a totally different corporate entity, Crown Nissan, Inc. Plaintiff never purchased a vehicle from Benton and Plaintiff never entered into a contract with Benton. Despite the lack of any contractual relationship, five years later, in during 2019, Benton began placing prerecorded marketing calls to get Plaintiff to purchase a new vehicle.  These calls were placed in violation of the Telephone Consumer Protection Act, which requires "express written consent" to place telemarketing calls that use a prerecorded or artificial voice. *See* 47 C.F.R. 64.1200(f)(9).

In its Motion, Benton attempts to convince this Court that these prerecorded marketing calls—which had nothing to do with the vehicle Plaintiff purchased from Crown and for which neither Crown nor Benton had the proper consent to place—should be sent to arbitration because of the 2014 car purchase agreement (herein the "Purchase Agreement") between Plaintiff and Crown Nissan. In doing so, Defendant simply tells the Court that it entered into an agreement with Crown Nissan and that part of what was "purchased by Benton Nissan was Crown Nissan's right, title and interest in Crown Nissan's sales records, customer lists and other customer data including deal jackets." [DE 9-1] at pg. 2. Benton does not actually submit this agreement between it and Crown Nissan, and further only submits a portion of the Purchase Agreement between Plaintiff and Crown Nissan, and the Credit Agreement Benton claims it gives it consent. *See id.* at pgs. 4-8.

Respectfully, this Court should deny Benton's Motion. First, Benton has not supported its argument that it is entitled to enforce a Purchase Agreement between Plaintiff and Crown. Benton simply concludes that it can, relying solely on the self-serving statement of one of its employees. The language of the Purchase Agreement itself shows that Benton is not entitled to enforce it. And, to the extent that Benton on reply tries to argue that it should be entitled to enforce the agreement under the doctrine of equitable estoppel—which is inapplicable here—it has waived this argument by failing to present it in its Motion.

Second, Plaintiff's TCPA claim for telemarketing calls in 2019 are totally outside the scope of the Purchase Agreement. As recently stated by Judge Snow of the District of Arizona in rejecting a motion to compel arbitration in an almost identical situation,

> Here, the arbitration clause does not encompass the dispute at issue. The subject of this suit does not "touch matters" covered by the Agreement because this suit is the result of Defendant's extra-contractual actions, unrelated to the promises outlined

in the parties' contract. **The Agreement was for the purchase of a vehicle, and this suit concerns Defendant's subsequent attempts to solicit new business. Although courts interpret arbitration agreements broadly, they must be bound by some limiting principle which excludes wholly unrelated conduct between the parties.** See *Litton Fin. Printing Div. v. NLRB,* 501 U.S. 190, 205, 111 S. Ct. 2215, 115 L. Ed. 2d 177 (1991) ("The object of an arbitration clause is to implement a contract, not to transcend it."); *Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003) (explaining that "absurd results ensue" from an unlimited arbitration clause, such that if a defendant murdered the plaintiff in order to discourage default on a loan, the wrongful death claim would have to be arbitrated).

*Briggs v. PFVT Motors LLC,* No. CV-20-00478-PHX-GMS, 2020 U.S. Dist. LEXIS 163949, at *5-6 (D. Ariz. Sep. 8, 2020). Judge Snow's opinion relied heavily on the Eleventh Circuit's decision in *Gamble v. New Eng. Auto Fin., Inc.*, 735 F. App'x 664, 666 (11th Cir. 2018). *See Briggs*, 2020 U.S. Dist. LEXIS 163949, at *7 ("although the clause applied to 'any dispute arising from or relating to" the agreement, language making an agreement broad "does not make it limitless.'") (quoting *Gamble*, 735 F. App'x at 666).

The same is true here, and "[Plaintiff's] TCPA claim, on the other hand, arises not from the [car purchase agreement] or any breach of it, but from post-agreement conduct that allegedly violates a separate, distinct federal law." *Gamble*, 735 F. App'x at 666. And while the FAA has been interpreted to favor arbitration, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Oxy-Health, Ltd. Liab. Co. v. H2 Enters.*, No. 19-55986, 2020 U.S. App. LEXIS 22527, at *1-2 (9th Cir. July 20, 2020) (quoting *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994)). Benton's interpretation of the agreement would lead to an absurd—and unconscionable— result in which any future dispute between Benton and Plaintiff is covered just because Plaintiff purchased a car from Benton in 2014. Courts around the country have rejected such a broad reading of arbitration agreements.

For the following reasons, Plaintiff respectfully requests that the Court deny Benton's Motion and allow this matter to proceed in Plaintiff's chosen forum.

## II.   FACTS AND BACKGROUND

In March 2014, Plaintiff purchased a vehicle from Crown Nissan, a non-party to this suit. *See* Mot. at pg. 3 (citing DE 9-1 at A-1 pp 2-3). Years later, during January to December of 2019, Benton caused multiple prerecorded voice message to be transmitted to Plaintiff's cellular telephone number ending in 1060. Compl. at pg. 2 ¶ 9. Defendant's prerecorded calls were not about the vehicle Plaintiff purchased; instead, they were for the purpose of attempting to get Plaintiff to purchase a new vehicle. *Id.* at pg. 3 ¶ 13. At no point in time did Plaintiff provide Defendant with her express written consent for prerecorded message calls to be initiated to her cellular telephone for marketing purposes. *Id.* at ¶ 14.

## III.   ARGUMENT

### A.   Defendant Has Failed to Properly Support its Motion

Preliminarily, Benton has failed to properly support its Motion by failing to submit (1) its purported agreement with Crown Nissan, and (2) the entire Purchase Agreement that contains the arbitration provision Benton seeks to enforce. Instead, Benton simply states that it is entitled to enforce the Purchase Agreement based on its employee's statement that there was a different agreement (again, not submitted to the Court) between Benton and Crown Nissan. Further, Benton attaches just excerpts of the Purchase Agreement between Plaintiff and Crown Nissan. Without both entire agreements, it is impossible for the Court to determine whether Plaintiff's TCPA claims against Benton should be sent to arbitration. *See Bazemore v. Jefferson Capital Sys.*, LLC, 827 F.3d 1325, 1331-32 (11th Cir. 2016) ("Accordingly, JSC did not meet its burden of proving that plaintiff assented to the 'essential terms of the contract' for the simple reason that the terms of

exactly what, if anything, Ms. Bazemore agreed to when she applied for the credit card are

unknown.") (citing *Herssein Law Grp. v. Reed Elsevier, Inc.,* 594 F. App'x 606, 608 (11th Cir.

2015) ("'It is a basic tenet of contract law that a party can only advance a claim of breach of written

contract by identifying and presenting the actual terms of the contract allegedly breached.'"));

*Gilbert v. I.C. Sys.*, No. 19-CV-04988, 2021 U.S. Dist. LEXIS 16279, at *18-20 (N.D. Ill. Jan. 28,

2021); *Lillegard v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, No. 16 C 8075, 2017 U.S. Dist.

LEXIS 72144, at *11 (N.D. Ill. May 11, 2017) ("Despite providing a copy of the terms and

conditions and the arbitration provision, Defendants have not provided a copy of the 'Fact Sheet.'

Without viewing the Fact Sheet, the Court cannot determine if Plaintiff's account was subject to

arbitration in the first place.").

### B. <u>There is No Agreement Between Plaintiff and Benton</u>

Benton's Motion should also be denied because it is not a signatory to the Purchase

Agreement between Crown Nissan and Plaintiff and because Benton has not met its burden of

demonstrating that it is entitled as a non-signatory to enforce the Purchase Agreement. "State law

'governs the issue whether a contract may be enforced by or against a nonparty.'" *Taylor Grp.,*

*Inc. v. Indus. Distribs. Int'l Co.*, No. 20-14764, 2021 U.S. App. LEXIS 16937, at *15 (11th Cir.

June 8, 2021) (quoting *Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295, 1302 (11th Cir. 2014)).

Further,

> "[w]here 'the language of the arbitration provisions limited arbitration to the
> signing parties,' th[e Alabama Supreme Court] has not allowed the claims against
> the nonsignatories to be arbitrated." *Smith v. Mark Dodge, Inc.*, 934 So. 2d 375,
> 380-81 (Ala. 2006) (quoting *Ex parte Stamey*, 776 So. 2d 85, 89 (Ala. 2000)). In
> other words, a nonsignatory cannot invoke equitable estoppel if "the description of
> the parties subject to the arbitration agreement [is] so restrictive as to preclude
> arbitration by the party seeking it." *Ex parte Stamey*, 776 So. 2d 85, 89 (Ala. 2000)

*Variable Annuity Life Ins. Co. v. Laferrera*, No. 7:15-cv-02350-LSC, 2016 U.S. Dist. LEXIS 190318, at *6 (N.D. Ala. June 1, 2016).

There is no dispute here that Benton itself did not sign the Purchase Agreement. Further, by its own terms, the Purchase Agreement governs disputes between Crown Nissan and Plaintiff, not between Plaintiff and Benton:

> The undersigned agree that: (a) all disputes **between us** must be resolved on an individual and not class wide basis; and (b) all disputes . . . resulting from, arising out of, relating to or concerning the transaction entered into or sought to be entered into (including but not limited to: any matters taking place either before or after the parties entered into this agreement . . . the terms of this agreement and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties; . . . the representations, promises, undertakings, warranties or covenants made by the dealer, it agents, servants, employees, successors and assigns . . .[1]

*See* Mot. at pg. 4 (emphasis added).  "Us" is not defined—at least not in the portions submitted by Benton. The only portion mentioning "assigns", which Defendant concludes it is but does not support with documentation, is explicitly limited to the types of claims against Crown that should be sent to arbitration: "the representations, promises, undertakings, warranties or covenants made by the dealer, it agents, servants, employees, successors and assigns[.]" Here, there are simply no claims against Crown; there are TCPA claims against Benton which, as explained below, are not a result or within the scope of the Purchase Agreement.

Further, to the extent that on reply Benton attempts to argue that it should be allowed to enforce the agreement under the doctrine of equitable estoppel (which does not apply here), it has waived that argument. *See Fleenor v. Warrior Met Coal Mining, LLC*, No. 7:18-cv-817-GMB, 2020 U.S. Dist. LEXIS 156316, at *16 (N.D. Ala. Aug. 28, 2020) ("Nevertheless, the defendants raised all of their arguments in opposition to Fleenor's *prima facie* case for the first time in their

---

[1] As discussed above, because Defendant did not submit the entire Purchase Agreement, it is impossible to properly analyze the agreement.

reply brief, and '[a]rguments not properly presented in a party's initial brief or raised for the first time in a reply brief are deemed waived.'" (quoting *Egidi v. Mukamai*, 571 F.3d 1156, 1163 (11th Cir. 2009)).

### C. Plaintiff's TCPA Claim is Beyond the Scope of the Purchase Agreement

Even if Benton had properly supported its Motion and was entitled to enforce the Purchase Agreement, this Court should still not compel arbitration because the claim is outside the scope of the agreement.

#### 1. The Court Can Analyze the Scope Question

Preliminarily, the Court can resolve the scope question despite the existence of a so-called delegation clause. *See* Mot. at pg. 8. First, Benton has brought the issue of scope to the Court's determination, thus waiving the delegation clause. *See* Mot. at ¶¶ 10; 12-13.

Second, the delegation clause does not apply for the simple reason that Benton is not a party to the agreement, and cannot otherwise enforce it. In *Tuckman*, the Eleventh Circuit determined that two non-signatories to an agreement could not compel another non-signatory to arbitration. *See See Tuckman v. JPMorgan Chase Bank, N.A.,* No. 20-11242, 2021 U.S. App. LEXIS 20072 (11th Cir. July 7, 2021). The compelling parties attempted to raise delegation, to which the Eleventh Circuit found that, for the same reasons that the agreement could not be enforced, the delegation clause could not be enforced either. *Id.* at *6 n.5 (11th Cir. July 7, 2021) ("Tuckman has challenged the delegation provision, and we agree with his contention that the provision is unenforceable here. Because the enforceability of the delegation provision turns on the same principles of law as the enforceability of the arbitration clause generally, we discuss the issues together."). The same holds true here and this Court can analyze whether the TCPA dispute is within the scope of the Purchase Agreement.

## 2.  **Plaintiff's TCPA Claims Are Outside the Scope**

Benton's Motion should be denied because the marketing calls placed by Benton to Plaintiff in 2019 are outside the scope of the 2014 Purchase Agreement's arbitration provision. "Arbitration . . . 'is simply a matter of contract' such that parties cannot be required to arbitrate a matter unless they have agreed to arbitration." *Dasher v. RBC Bank (USA)*, 882 F.3d 1017, 1022 (11th Cir. 2018) (citing *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995))). "[I]t is the language of the contract that defines the scope of disputes subject to arbitration." *Gamble,* 2018 U.S. App. LEXIS 14608, at *3 (quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002)). "[N]othing in the [Federal Arbitration Act] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *Id.* (alteration in in original). "The party asserting the existence of a contract has the burden of proving its existence and its terms." *Dasher*, 882 F.3d at 1023 (citations omitted).

"'The presumption in favor of arbitration, however, does not apply if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision.'" *Briggs*, 2020 U.S. Dist. LEXIS 163949, at *4 (quoting *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044-45 (9th Cir. 2009) (internal quotation omitted). Here, Plaintiff's TCPA claims encompass conduct by Benton that involves an entirely separate violation of a federal law that is not contemplated by the Agreement.

In *PFVT,* the court refused to compel arbitration on almost identical facts, and relied on the Eleventh Circuit's *Gamble* opinion:

> Further, this case is unlike the Ninth Circuit cases affirming the broad applicability of arbitration clauses because the Defendant's conduct is distinct from the Agreement. See *Simula*, 175 F.3d at 720-21 (applying an arbitration clause to parties in an ongoing contractual relationship and dispute which arose out of a

contract concerning automobile safety equipment); *Standard Fruit Co.,* 937 F.3d at 471-72 (applying an arbitration clause from an agreement attempting to resolve an ongoing dispute over the parties' ownership and control of banana plantations); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1461, 1463 (9th Cir. 1983) (applying an arbitration clause from a joint building agreement where the suit was a result of the agreement not going forward). Rather, the Eleventh Circuit in *Gamble v. New Eng. Auto Fin.*, 735 F. App'x 664 (11th Cir. 2018) is instructive. There, months after paying off an auto loan from the defendant, the plaintiff received repeated messages from the defendant seeking new business. Id. at 664. The court refused to find that the parties' arbitration clause from the first loan applied to this new solicitation of business. *Id.* at 666. Although the clause applied to "any dispute arising from or relating to" the agreement, language making an agreement broad "does not make it limitless." *Gamble*, 735 F. App'x at 666; *see In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012) (refusing to find a suit arbitrable where the arbitration agreement entered at the time of a service covered "any and all disputes" because the plaintiff was subsequently bombarded with texts promoting future, unrelated services from the defendant).

Here too, Defendant's conduct is a new solicitation of business unrelated to the parties' prior agreement. The Agreement covered the sale of a vehicle that Plaintiff traded to another dealer years prior to Defendant's new solicitations of Plaintiff's business. (Doc. 24 at 3.) The arbitration clause's application to any suit that may "arise out of or relate to" the Agreement or relationship is clearly broad, but that fact alone cannot compel the Plaintiff to arbitrate all future suits no matter how unrelated to the original agreement and relationship. (Doc. 23-1 at 3); *see Breda v. Cellco P'ship*, 934 F.3d 1, 8 (1st Cir. 2019) (refusing to find a dispute arbitrable because "all of the material facts underlying [plaintiff's] claims . . . occurred after the agreement's termination."). Rather, Defendant's interpretation extends the scope of arbitrable claims past the point that any reasonable consumer would expect. This dispute thus lies outside the scope of the parties' arbitration agreement.

*PFVT*, 2020 U.S. Dist. LEXIS 163949, at *6-8; *see also Gamble,,* 735 F. App'x at 666 (11th Cir. 2018) ("Ms. Gamble's TCPA claim, on the other hand, arises not from the Loan Agreement or any breach of it, but from post-agreement conduct that allegedly violates a separate, distinct federal law. And NEAF's sending of the text messages do not relate to or arise from its lending money to Ms. Gamble, Ms. Gamble's repayment of that loan, or the vehicle which secured the loan."); *Trenz v. On-Line Adm'rs*, No. CV 15-08356-AB (KSx), 2016 U.S. Dist. LEXIS 199598, at *12 (C.D. Cal. Dec. 16, 2016) ("The TCPA claims here 'relate to' the Defendants' efforts to solicit his business, not to the lease transaction or any transaction or relationship related to the lease transaction."); *Foster v. Aaron's Inc.*, No. CV-15-01637-PHX-SRB, 2016 U.S. Dist. LEXIS

193065, at *4-5 (D. Ariz. Apr. 21, 2016) ("The calls at issue here did not refer to Plaintiff's lease agreement, but were part of Defendant's efforts to collect an unpaid balance from another customer."); *Porter v. Dollar Fin. Group, Inc.*, 2:14-1638 WBS AC, 2014 WL 4368892, at *3 (E.D. Cal. 2014) (denying defendant's motion to compel arbitration where plaintiff alleged she received calls in violation of the TCPA that were not related to the contract containing the arbitration provision, because the arbitration agreement did not "encompass[ ] the dispute at issue"); *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001) ("[d]isputes that are not related—with at least some directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause"); *Breda v. Cellco P'ship,* 934 F.3d 1, 7-8 (1st Cir. 2019) ("readily conclud[ing]" that plaintiff's "TCPA claims do not have their real source in [the parties'] expired Agreement…, that of customer and telephone service provider"); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) ("The term 'arising out of' in standard arbitration provisions is broad, but it is not all encompassing. It requires the existence of some direct relationship between the dispute and the performance of duties specified by the contract.") (internal alterations omitted); *Holcombe v. DIRECTV, LLC*, 159 F. Supp. 3d 1337 (N.D. Ga. 2016) (holding that the plaintiff's TCPA claim does not fall within the scope of the parties' arbitration agreement because DirecTV's calls were for "advertising, marketing, or other purposes" soliciting plaintiff to enter into a new account); *Wagner v. Discover Bank*, 12 CV-02786-MSK-BNB, 2014 WL 128372, at *5 (D. Colo. 2014) (denying defendant's motion to compel arbitration, holding plaintiff's TCPA claims "relate to matters beyond the scope of the parties' arbitration agreement").

Benton attempts to argue a position that numerous courts have essentially described as indefensible—that an arbitration agreement was so expansive that it had no limiting principle.  *See In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253, 1262-63 (S.D. Cal. 2012).  In *In Re Jiffy Lube International*, the district court concluded that an arbitration clause covering "any and all disputes" "would clearly be unconscionable." *Id*. at 1263. The court cited *Stein v. Steinkamp*, 318 F.3d 775

(7th Cir. 2003), in which Judge Posner noted the "absurd results" that would follow from an arbitration clause not tethered to an underlying agreement:

> [I]f Instant Cash murdered Smith in order to discourage defaults and her survivors brought a wrongful death suit against Instant Cash . . . Instant Cash could insist that the wrongful death claim be submitted to arbitration. For that matter, if an employee of Instant Cash picked Smith's pocket when she came in to pay back the loan, and Smith sued the employee for conversion, he would be entitled to arbitration of her claim. It would make no difference that the conversion had occurred in Smith's home 20 years after her last transaction with Instant Cash.

*Id*. at 777.  He opined that such results "might be thought unconscionable," *id*. at 778, but did not have to address that issue because the agreement was susceptible of a construction limiting "the duty to arbitrate to disputes arising under 'this Agreement.'" *Id*. at 777.

Similarly, here, this Court need not reach the issue of whether the arbitration clause is unconscionable because the Court should find that the scope of the provision is narrow enough to exclude this action.  Nevertheless, the interpretation that Benton advocates would render the arbitration clause unconscionable.  There is no logical limiting principle that would limit the scope of the arbitration clause under Benton's interpretation of "all disputes", and Benton's reading is as broad as the absurd result hypothesized by Judge Posner.

For example, forcing arbitration on the present TCPA matter would be equivalent to compelling arbitration if Plaintiff was rear-ended by an employee of Benton.  *See, e.g.*, *Savage v. Citibank N.A.*, No. 14-cv-03633-BLF, 2015 U.S. Dist. LEXIS 62343, at *10 (N.D. Cal. May 12, 2015) ("It thus stretches the bounds of reason to interpret the 'our relationship' language so broadly to encompass all other interactions with Citi, whether anticipated or not. […]   Defendants' arguments in this case are analogous to those advanced—and rejected—in *In re Jiffy Lube Int'l, Inc*."); *Esparza v. SmartPay Leasing, Inc.*, No. C 17-03421 WHA, 2017 U.S. Dist. LEXIS 164014, at *7 (N.D. Cal. Oct. 3, 2017) ("[R]eading the clause as applying to any and every claim arising between SmartPay and its customers, even including employment and tort claims, with no limiting

principle would render the clause impermissibly overbroad, and therefore inoperable.") (citing *Savage* and *In re Jiffy Lube Int'l, Inc.*).

No reasonable person would think that signing an agreement with an arbitration clause would obligate them to arbitrate literally every possible dispute he or she might have with the other party indefinitely and without any limitation. *See Revitch v. DirecTV, LLC*, No. 18-cv-01127-JCS, 2018 U.S. Dist. LEXIS 143812, at *46-47 (N.D. Cal. Aug. 23, 2018) ("the undersigned agrees with the Court in *Wexler* that the broad interpretation of the arbitration provision advanced by DirecTV leads to absurd results. Under DirecTV's interpretation of the arbitration provision, merely by agreeing to a contract to receive wireless service a customer would  agree to subject to arbitration not only disputes that might arise with the service provider relating to that service but virtually any sort of dispute the customer might have against any entity that might in the future be acquired by the holding company that owns the service provider. No reasonable consumer would enter into such a contract.").

Respectfully, this court should reject such a broad interpretation of the scope of the Agreement.

### D. Defendant Did not Have Express Written Consent to Send Prerecorded Telemarketing Messages to Plaintiff

Finally, and although not relevant to Defendant's actual requested relief, Defendant briefly raises the issue of consent and argues it had consent to place marketing prerecorded calls based on a "Credit Application" signed in 2014 between Plaintiff and Crown. First, Defendant again does not submit the entire agreement. Second, the agreement is not with Benton, but appears to be Crown, although the "dealer name" is blank. Finally, this agreement is not proper consent. To place prerecorded telemarketing calls, Defendant required "prior express written consent" as defined in the TCPA's regulations at 47 C.F.R. 64.1200(f)(9). The language cited by Benton, which is clearly applicable to calls regarding the credit given to Plaintiff to purchase the vehicle, is deficient for a host of reasons, including that (1) it does not state that Plaintiff agrees to

"telemarketing" (or even marketing) calls, *id.* at 64.1200(f)(9)(i)(A), (2) is not "clear and conspicuous", *id.* 64.1200(f)(9)(i), and (3) is not optional, *id.* at 64.1200(f)(9)(i)(B).

## <u>CONCLUSION</u>

**WHEREFORE**, Plaintiff respectfully requests an order denying Benton's Motion to Compel Arbitration, and for such other relief deemed appropriate by this Court.


Dated:  July 28, 2021

Respectfully submitted,

<u>*/s/ Ignacio J. Hiraldo, Esq.*</u>

**IJH LAW**
Ignacio J. Hiraldo, Esq. (*pro hac vice*)
Florida Bar No. 0056031
Washington, DC Bar No. 485610
1200 Brickell Ave Suite 1950
Miami, FL 33131
Email: ijhiraldo@ijhlaw.com
Telephone: 786.496.4469